## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JEFFERSON FAGGARD**

**CIVIL ACTION**

**VERSUS**

**NO. 17-3863**

**STATE OF LOUISIANA**

**SECTION: "J"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Jefferson Faggard,[1]  is a convicted inmate currently incarcerated at the River Bend Detention Center in Lake Providence, Louisiana.    He was charged with two

---

[1]  The state-court record also refers to him as Jefferson Faggard, Jr.    Apparently this suffix, or lack thereof, created confusion at times because his father, Jefferson Faggard, Sr., also has a criminal record.    *See* State Rec., Vol. 2 of 6, District Court Order, 11/30/15 and Deputy Clerk's letter to Warden.    As the Louisiana Fifth Circuit noted on direct appeal, the bill of information and commitment order do not include the suffix.    The instant federal petition is styled "Jefferson Faggard."    Therefore, the Court will omit the suffix for this report and recommendation.

counts of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance in violation of Louisiana Revised Statute 40:983, occurring on or about October 9, 2013 (count one) and on November 8, 2012 (count two), and one count of possession of methamphetamine in violation of Louisiana Revised Statute 40:967(C), occurring on February 6, 2014 (count three).[2]    Trial began on March 3, 2015. After the State rested its case on March 5, 2015, Faggard withdrew his not-guilty pleas and pleaded guilty to all counts.[3]    Following a plea colloquy, the trial court sentenced him to 15 years imprisonment at hard labor on counts one and two and five years imprisonment on count three, with all three sentences to run concurrently.    That same day, the State filed a multiple-offender bill of information charging him as a third-felony offender.    Faggard pleaded guilty to the multiple bill.    The trial court vacated his sentence on count two and sentenced him as a third-felony offender to 15 years imprisonment at hard labor to run concurrently with all other sentences.[4]    He filed a pro se motion for appeal that incorporated a request to withdraw his guilty plea.    The trial court granted his motion for appeal, but denied the request to withdraw his guilty plea.[5]

---

[2]  State Rec., Vol. 1 of 6, Bill of Information.

[3]  State Rec., Vol. 5 of 6 (Trial Transcript, pp. 157-185), State Rec., Vol. 1 of 6, Minute Entry, 3/5/15.

[4]  *Id.* As part of the plea agreement, he also pleaded guilty to various misdemeanor charges (Case No. 14-1317).    He does not challenge the misdemeanor convictions in this federal proceeding.

[5]  State Rec., Vol. 1 of 6, Motion for Appeal filed March 12, 2015.    *See* State Rec., Vol. 2 of 6, District Court Order, 3/31/15.

On direct appeal, appointed counsel filed an *Anders*[6] brief citing no non-frivolous issues for review and sought to withdraw as counsel of record.    Upon independent review of the record, the Louisiana Fifth Circuit Court of Appeal determined there were no non-frivolous issues for direct review and granted the motion to withdraw.    In affirming the convictions and sentences, the court of appeal also considered and rejected Faggard's seven pro se assignments of error raised by supplemental appellant brief.[7]    His motion for rehearing was denied.    On February 10, 2017, the Louisiana Supreme Court denied his application for a writ of certiorari.[8]

Several months later, Faggard filed his federal application for habeas corpus relief.[9] In that application, he raises four grounds for relief:    (1) his conviction is based on a defective and invalid bill of information that failed to state the essential elements for the charges of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance; (2) the court of appeal erroneously found there were no non-frivolous issues for review on direct appeal and allowed counsel to withdraw; (3) his guilty plea was constitutionally infirm because it was not knowing, intelligent or voluntary;

---

[6] *Anders v. California*, 386 U.S. 738 (1967); *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241.

[7] *State v. Faggard*, 15-KA-585 (La. App. 5 Cir. 1/13/16), 184 So.3d 837, *reh'g denied* (La. App. 5 Cir. 2/10/16); State Rec., Vol. 2 of 6.

[8] *State v. Faggard*, 2016-KO-0338 (La. 2/10/17), 215 So.3d 701; State Rec., Vol. 6 of 6.    *See also* La. S.Ct. Writ Application and Supplemental Brief, No. 16-KO-338.

[9] Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

3

and (4) trial counsel's performance was constitutionally deficient.    The State concedes that

the federal application is timely and argues the claims should be denied on the merits.[10]

**Facts**

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

adduced at trial as follows:

> Although defendant pled guilty to two counts of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance and one count of possession of methamphetamine, he did not enter his guilty pleas until after the State rested its case at trial. During the guilty plea colloquy, the State provided that it "would rely on the Record of the trial up to this point with the sworn testimony of all its witnesses as a factual basis for this plea."
>
> At trial, Detective Shawn Vinson testified that in November of 2012, he became involved in an investigation of a possible "meth lab" at 2321 Justin Lane in Harvey, Louisiana. On November 8, 2012, Detective Vinson and other officers went to the residence and ran a name check on the legal occupant of the residence, Christina Wallace. Detective Vinson learned that Ms. Wallace had a traffic attachment. When Ms. Wallace arrived at the residence, she was arrested on the traffic attachment. In the doorway of the house, Detective Vinson made contact with other occupants of the residence, including defendant and his father, Jefferson Faggard, Sr. Detective Vinson testified that from the doorway, in plain view, the officers could see components of what they believed was a "meth lab." He further testified that there was a "chemical smell."
>
> Ms. Wallace signed a consent to search form, and the officers entered the residence. Detective Vinson testified that the officers recovered "precursors or ingredients to use in methamphetamine or making methamphetamine" including brake fluid, tinfoil, camping fuel, cold packs, clear plastic bags with "crystalized white substances" and "white powder residue," and a blender containing a "white powdery substance." He also testified that officers recovered a spoon with cotton in it and an "off-white dry liquid substance," and some used syringes. Detective Vinson further testified that officers discovered a clear mason jar with tubes extending from it, which he stated was

---

[10]  Rec. Doc. 15.

commonly called a "one-pot system" used in the creation of methamphetamine.

Christina Wallace testified that in November of 2012, she lived at 2321 Justin Lane. She testified that she pled guilty to creation or operation of a clandestine laboratory in order to "get out of jail," but she did not commit the crime. Ms. Wallace stated that she was dating defendant in November of 2012 and that they used controlled dangerous substances together, but neither of them engaged in the creation or operation of a methamphetamine lab. Although she allowed defendant, his father, Jefferson Faggard, Sr., and his mother, Janet Hamblen, to occasionally sleep at her residence, Ms. Wallace did not see anyone engage in the production of methamphetamine.

Pamela Cyprian, a forensic scientist, was accepted as an expert in the examination and analysis of controlled dangerous substances. Ms. Cyprian testified that she analyzed evidence recovered from Ms. Wallace's residence and it contained a substance that she conclusively identified as methamphetamine.

Deputy Matthew Thomas testified that on October 9, 2013, between 3:00 and 3:30 a.m., he was on patrol when he saw a suspicious man, later identified as defendant, riding a bicycle with several bags attached to it, including a golf bag with several golf clubs. Deputy Thomas asked defendant to stop and talk to him, and defendant complied. Defendant indicated that his name was Joshua Faggard and that his birthdate was February 23, 1978. According to Deputy Thomas, the last name, Faggard, reminded him that officers were looking for Jefferson Faggard. He stated that he asked defendant if he knew Jefferson Faggard, and defendant replied that he was his brother. After communicating on the "N.C.I.C. channel," everything came back clear for the name Joshua Faggard, so Deputy Thomas allowed defendant to leave. However, when he returned to his vehicle and ran the name Jefferson Faggard with the birthdate provided by defendant, the computer showed a photograph of defendant.

Deputy Thomas testified that he located defendant again and asked him to stop, but defendant fled, discarding his bicycle and bags in the process. A backpack connected to the bicycle began to emit smoke and a green substance began to "ooze" out. Deputy Thomas testified that the fire department pulled items out of the backpack, including commercial lye, drain cleaner, a Gatorade bottle with an unknown substance, a pack of lithium batteries, and a soda bottle containing a green fluid and with a "hose attached to the bottle."

Deputy Dwain Rullman testified that on February 6, 2014, at approximately

9:30 p.m. or 10:00 p.m., he responded to a 9–1–1 call regarding two suspicious individuals on Carol Sue Avenue. Deputy Rullman saw a suspicious person, later identified as defendant, riding a bicycle. He stated that defendant was wearing gloves, had a backpack, and was hurrying towards the exit gate of an apartment complex. Deputy Rullman testified that he stopped defendant, who advised him that his name was Joshua Badeaux and provided his birthdate as August 23, 1978. According to Deputy Rullman, when he ran the information provided by defendant, nothing came up in the system. He attempted to detain defendant because he believed that defendant gave him a false name, but defendant pushed him and fled to an apartment.

According to Deputy Rullman, he caught up with defendant as he pounded on the apartment door. Defendant continued to resist, so two other officers responded and assisted him in apprehending defendant. Deputy Rullman conducted a search of defendant's person and found identification showing that he was Jefferson Faggard and also some narcotics. On defendant's person, he also found plastic bags containing a white-residue, later determined to be methamphetamine, a pill canister containing a white residue, and a syringe. Deputy Rullman arrested defendant for possession of methamphetamine. At the time of his arrest, defendant had an attachment for his arrest for creation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance.

Paul Forst, an employee of a company called AFRIS, testified that AFRIS runs an electronic system to track over-the-counter sales of Sudafed and Ephedrine products. According to Mr. Forst, Louisiana law requires that no more than nine grams of Sudafed or Ephedrine be purchased by an individual in a 30–day period. Mr. Forst testified that sales logs showed that there were 107 transactions associated with defendant's name between May 31, 2012 and February 3, 2014.

Detective Chris Comeaux was accepted as an expert in methamphetamine manufacturing. Detective Comeaux testified that the essential ingredient for a "complete one-pot meth lab" is pseudoephedrine, which is contained in over-the-counter nasal decongestants. Detective Comeaux further explained the common processes and procedures for making methamphetamine.

Detective Comeaux testified that the items recovered from Ms. Wallace's residence on Justin Lane could be used to manufacture methamphetamine using a "one-pot meth lab." Detective Comeaux also testified that the items pulled out of the backpack on defendant's bicycle during the October 9, 2013 incident were related to the production of methamphetamine. He stated that

they are supplies used to create or operate a clandestine laboratory.

Finally, Detective Comeaux testified regarding the plastic bags found in defendant's pockets during the February 6, 2014 incident. He stated that it appeared that the plastic bags were used in the methamphetamine manufacturing process because of the way they were folded and the leftover residue in the bags.[11]

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[11] *State v. Faggard*, 184 So.3d at 841-43.

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision

8

conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102

(emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA

prevents defendants—and federal courts—from using federal habeas corpus review as a

vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A. Sufficiency of the Bill of Information

Faggard claims that the bill of information did not properly charge him with the crime

of creation or operation of a clandestine laboratory for the unlawful manufacture of a

controlled dangerous substance.    He argues that the intermediate court of appeal erred in

finding the bill of information proper as part of its *Anders* review on direct appeal.    The

Louisiana Fifth Circuit reasoned:

> The bill of information properly charged defendant and presents no non-
> frivolous issues for appeal.    As required, it plainly, concisely, and definitely
> states the essential facts constituting the offenses charged, and it sufficiently
> identifies defendant and the crimes charged. *See* La. C.Cr.P. arts. 464-466.

Faggard asserts that the bill of information failed to set forth the particular subsection (1)

through (4) under Louisiana Revised Statute 40:983(A),[12]   as an essential element of the

_____

[12]    These subsections specify that the creation or operation of a clandestine
laboratory for the unlawful manufacture of a controlled dangerous substance is any of the
following:    (1) the purchase, sale, distribution or possession of any material, compound,
mixture, preparation, supplies, equipment, or structure with the intent that it be used for the
unlawful manufacture of a controlled dangerous substance; (2) the transportation or
arranging for the transportation of any material, compound, mixture, preparation, supplies
or equipment with the intent that such material, compound, mixture, preparation, supplies
or equipment be used for the unlawful manufacture of a controlled dangerous substance; (3)
the distribution of any material, compound, mixture, preparation, equipment, supplies, or
products which material, compound, mixture, preparation, equipment, supplies, or products

criminal charge for creation or operation of a clandestine laboratory.    He first raised the argument as a "supplemental claim" in his application for writ of certiorari filed with the Louisiana Supreme Court.[13]    The Louisiana Supreme Court denied relief without stated reasons.[14]

In *Liner v. Phelps*, the United States Fifth Circuit Court of Appeals set forth the relevant legal considerations:

> "It is settled in this Circuit that the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980).    *See also Meyer v. Estelle*, 621 F.2d 769, 771 (5th Cir. 1980); *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969). This Court has also observed that habeas corpus can be invoked with respect to the sufficiency of an indictment only when the indictment is so fatally defective that under no circumstances could a valid conviction result from facts provable under the indictment, and that such a determination "can be made *only* by looking to the law of the state where the indictment was issued." *Johnson v. Estelle*, 704 F.2d 232, 236 (5th Cir. 1983) (emphasis added). Specifically, the conclusion as to whether a state trial court

---

have been used in, or produced by, the unlawful manufacture of a controlled dangerous substance; (4) the disposal of any material, compound, mixture, preparation, equipment, supplies, products, or byproducts, which material, compound, mixture, preparation, equipment, supplies, products, or byproducts have been used in, or produced by, the unlawful manufacture of a controlled dangerous substance.    La. Rev. Stat. Ann. § 40:983(A).

[13] Rec. Doc. 3-1, pp. 2-3, 27-28 (attached Louisiana Supreme Court writ application).

[14] Although Faggard did not specifically assert this claim on direct appeal with the Louisiana Fifth Circuit (either in his supplemental pro se brief, State Rec., Vol. 2 of 6, or his application for rehearing, State Rec., Vol. 6 of 6), the appellate court briefly addressed the issue as part of its independent review for compliance with *Anders*, *i.e.*, to determine whether the appeal is wholly frivolous.    He did not pursue post-conviction relief proceedings through the Louisiana state courts.    In an abundance of caution, the Court notes that even if the claim was not properly exhausted under the circumstances, an argument not made by the State, this Court nevertheless has the authority to consider and reject on the merits an unexhausted and plainly meritless claim.    *See* 28 U.S.C. § 2254(b)(2).

was deprived of jurisdiction by a fatally defective indictment is a question foreclosed to a federal habeas court "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969). *See also Bueno v. Beto*, 458 F.2d 457, 459 (5th Cir.), *cert. denied*, 409 U.S. 884, 93 S.Ct. 176, 34 L.Ed.2d 140 (1972); *Lowery v. Estelle*, 696 F.2d 333, 337 (5th Cir. 1983) ("... the predicate conclusion of no jurisdiction derives *wholly* from state law controlling the validity of Texas indictments." (Emphasis added.)).

*Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984); *see also Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009).

Here, the state courts, including specifically the Louisiana Supreme Court, determined the validity of the bill of information.    In denying relief, the highest state court presumably found that the bill of information properly conferred jurisdiction upon the state trial court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991); *Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985) ("By refusing to grant appellant relief ... the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose.").    To the extent the state courts found that the charging document was legally sufficient as a matter of state law, the federal courts have no authority to overrule or second-guess the state courts' rulings on the interpretation or application of their own procedural rules.[15]    "The principle that state courts are the final

---

[15]    In an abundance of caution, the Court also notes that the ruling appears proper under Louisiana law.    La. Code Crim. Proc. art. 464 ("The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."); *see also State v. Baylis*, 388 So.2d 713, 718-19 (La.

arbiters of state law is well-settled."    *Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Ins. Co.*, 706 F.3d 622, 629 (5th Cir. 2013); accord *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)).

Even if the claim is considered, it is clear that Faggard was fully apprised of the nature of the charges against him.    The record shows that Faggard had fair notice of the charges and an adequate opportunity to establish a defense to these charges.    The bill of information notified Faggard of the statutory provisions he was accused of violating and specified the date of each crime.    The information charged two dates, October 9, 2013 and November 8, 2012, on which "he did create and/or operate a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance" in violation of La. R.S. 40:983. He had notice of the nature of the criminal offenses and the specific criminal statute, which defines those circumstances that constitute the "creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance."

Additionally, as part of his pro se motion to quash the bill of information on grounds that the prosecution was not timely instituted, the trial court delved into the elements

---

1980); *State v. Michels*, 726 So.2d 449, 451-52 (La. App. 5 Cir. 1999).

underlying the charges and the basis for those charges.[16]    At the November 2014 hearing on the motion, the prosecutor stated that Faggard was being charged with subsections (A)(1) and (2), specifically, and not subsections (3) or (4).[17]    The trial court asked Faggard if he understood what he was being charged with and he stated that he did.    He was thus fully informed and knew the nature of the charges against him at least four months before trial. He sat through several days of trial during which the State presented its entire case.    After hearing all of the evidence against him, he chose to enter guilty pleas.

In sum, the bill of information filed by the State provided sufficient notice to protect his due-process rights.    The record shows that he was fairly informed of the precise charges against him so that no prejudice resulted from either surprise or lack of notice and he received protection from double jeopardy.    *United States v. Debrow*, 346 U.S. 374, 376 (1953).    The state court's denial of relief was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    He is not entitled to relief on this claim.

### B.  Appellate Court Error

Faggard asserts that the state appellate court unreasonably applied the standard under *Anders v. California* in permitting appointed counsel to withdraw.    He argues that there was a non-frivolous issue, that is, the State had no authority to charge him in a

---

[16]  State Rec., Vol. 1 of 6, Motion to Quash filed October 21, 2014.

[17]  State Rec., Vol. 3 of 6, Transcript of Motion Hearing (November 5, 2014), pp. 12-14.

superseding information with the November 2012 offense.

In considering appointed counsel's *Anders* brief and motion to withdraw on direct review, the Louisiana Fifth Circuit first set out the applicable federal law and corresponding state law:

> In *Anders*, *supra*, the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if he finds the case to be wholly frivolous after a conscientious examination of it. The request must be accompanied by "a brief referring to anything in the record that might arguably support the appeal" so as to provide the reviewing court "with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability" and to assist the reviewing court "in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw." *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).

> In *Jyles*, 96–2669 at 2, 704 So.2d at 241, the Louisiana Supreme Court stated that an *Anders* brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. The supreme court explained that an *Anders* brief must demonstrate by full discussion and analysis that appellate counsel "has cast an advocate's eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration." *Id.*

> When conducting a review for compliance with *Anders*, an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous. If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel's motion to withdraw and affirm the defendant's conviction and sentence. *Bradford*, 95–929 at 4, 676 So.2d at 1110.[18]

After reviewing the brief presented and conducting an independent analysis of the record,

---

[18]  *State v. Faggard*, 184 So.3d at 843-44.

the court of appeal concluded there were no non-frivolous issues surrounding Faggard's guilty plea, multiple-offender stipulation or sentencing to be raised on appeal. The appellate court reasoned:

> In the present case, defendant's appellate counsel asserts that after a careful review of the record, he can find no non-frivolous issues to raise on appeal. Counsel states that defendant entered an unqualified guilty plea, thereby waiving all non-jurisdictional defects. He notes that no reservation of rights under *State v. Crosby*[19]  was made as part of the plea agreement.
>
> In addition, appellate counsel notes that defendant indicated during the guilty plea colloquy that he had not been forced, coerced, or threatened to enter the guilty plea, that he was pleading guilty because he was in fact guilty, and that he understood his rights, the charges, and the sentences he would receive in exchange for the guilty pleas. Counsel states that defendant was specifically advised that he was giving up his right to an appeal. Appellate counsel also notes that the waiver of rights form sets forth all of the rights defendant was waiving by pleading guilty. Counsel asserts that there is no basis in the record to support the conclusion that the guilty pleas are constitutionally infirm.
>
> Further, appellate counsel asserts that the plea bargain appears to have been advantageous to appellant. He explains that the agreement resulted in a 15–year sentence on a "triple bill," when defendant faced up to 30 years imprisonment for violating La. R.S. 40:983. Counsel also notes that if a "quad bill" had been filed, defendant would have been exposed to a potential life sentence.
>
> An independent review of the record supports appellate counsel's assertion that there are no non-frivolous issues to be raised on appeal. The bill of information properly charged defendant and presents no non-frivolous issues for appeal. As required, it plainly, concisely, and definitely states the essential facts constituting the offenses charged, and it sufficiently identifies defendant and the crimes charged. *See* La.C.Cr.P. arts. 464–466. As reflected by the minute entries and transcripts, defendant appeared at each stage of the proceedings against him. As such, defendant's presence does not present any issue for appeal.
>
> Prior to his guilty pleas, defendant filed pre-trial motions to suppress

---

[19]  *State v. Crosby*, 338 So.2d 584, 586 (La. 1976).

statements, evidence, and identification. While the record does not indicate that all of defendant's motions were ruled upon, defendant waived the motions by pleading guilty without raising the issue. *See State v. Corzo*, 04–791, p. 2 (La. App. 5 Cir. 2/15/05), 896 So.2d 1101, 1102. Defendant also filed a pro se motion to quash, which was denied, and made an oral motion to sever count three. However, defendant did not preserve these, or any other pre-trial ruling, for appellate review under *Crosby, supra*. *See State v. Fontenberry*, 09–127, p. 7 (La. App. 5 Cir. 10/27/09), 27 So.3d 904, 909, *writ denied*, 09–2665 (La. 5/28/10), 36 So.3d 246, in which this Court found that the denial of a motion to sever may be preserved for appellate review pursuant to *Crosby*, *supra*.

The record shows that defendant was aware that he was pleading guilty to two counts of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance and one count of possession of methamphetamine. The transcript and waiver of rights form both reflect that defendant was advised of his rights to a trial by jury or by the court, to confront and cross-examine his accusers, against self-incrimination, and that by pleading guilty he was waiving those rights. Thus, defendant was properly advised of his *Boykin* rights, and the record reflects that defendant indicated that he understood he was waiving these rights. In addition, defendant indicated that he had discussed the case with his attorney, that the waiver of rights form was explained to him, and that he understood the waiver of rights form. Defendant indicated that he had not been forced, intimidated, coerced, or promised anything if he pleaded guilty. The transcript reflects that defendant indicated he understood that by pleading guilty he was admitting that he had, in fact, committed the charged crimes.

The transcript and the waiver of rights form both reflect that defendant was advised that he faced a maximum sentence of 15 years imprisonment on each of the two counts of creation or operation of a clandestine laboratory and a maximum sentence of five years imprisonment for possession of methamphetamine. They also reflect that defendant was advised that if his guilty pleas were accepted, he would be sentenced to 15 years imprisonment on counts one and two and five years on count three, to run concurrently with each other. The State also agreed to file a "triple bill," instead of alleging that defendant was a "quadruple offender," in exchange for his guilty plea.

The imposed sentences of 15 years imprisonment on counts one and two, and five years on count three, fall within the sentencing ranges prescribed by statute. *See* La. R.S. 40:983; La. R.S. 40:967. Also, defendant was sentenced in conformity with a plea agreement. La. C.Cr.P. art. 881.2(A)(2) precludes a

> defendant from seeking review of his sentence imposed in conformity with a plea agreement, which was set forth in the record at the time of the plea. *See State v. Ott*, 12–111, pp. 9–10 (La. App. 5 Cir. 10/16/12), 102 So.3d 944, 951.
>
> In addition, defendant stipulated to the multiple offender bill of information alleging that he was a third felony offender. Our review of the multiple offender proceedings and sentencing reveals no non-frivolous issues for appeal.
>
> Based on the foregoing, we find that the proceedings surrounding defendant's guilty pleas, multiple offender stipulation, and sentencing do not present any non-frivolous issues to be raised on appeal. Appellant counsel's brief adequately demonstrates by full discussion and analysis that he has reviewed the trial court proceedings and cannot identity any basis for a non-frivolous appeal, and an independent review of the record supports counsel's assertion.[20]

On rehearing, Faggard argued that the record was insufficient for appellate review and the reviewing court failed to make the state respond to his pro se brief, thereby denying him due process, equal protection and his right to appeal.    His request for a rehearing was denied.

Faggard filed an application for writ of certiorari with the Louisiana Supreme Court. In a supplemental brief in support of his application for writ of certiorari, he claimed that the reviewing court did not act in accordance with *Anders v. California* when it granted appointed counsel's motion to withdraw.    He argued that the appellate court could not have conducted a full review because it failed to consider (and the record did not include) pleadings from Case No. 12-5780, in which he was initially charged with the creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous

---

[20] *State v. Faggard*, 184 So.3d at 844-45 (footnote in original).

substance," alleged to have occurred on November 8, 2012.    He highlighted the alleged inability of the State to bring this charge against him again in a superseding bill of information as a non-frivolous issue for review on direct appeal.    Thus, he claimed the motion to withdraw was improvidently granted without a conscientious and thorough *Anders* review.[21]    The Louisiana Supreme Court denied relief on the claim without additional stated reasons.[22]    For the following reasons, the state court's decision was not contrary to or an unreasonable application of *Anders*.    28 U.S.C. § 2254(d)(1).

In *Anders v. California*, the Supreme Court held:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

---

[21]  State Rec., Vol. 6 of 6, Louisiana Supreme Court Application for Certiorari-Supplement.

[22]  State Rec., Vol. 6 of 6, *State v. Faggard*, 2016-KO-0338, 2017 WL 744119 (La. 2/10/17).

*Anders*, 386 U.S. at 744 (footnote omitted).    Subsequently, in *Smith v. Robbins*, 528 U.S. 259 (2000), the Supreme Court explained the confines of its *Anders* decision in which it had "held that, in order to protect indigent defendants' constitutional right to appellate counsel, courts must safeguard against the risk of granting such requests in cases where the appeal is not actually frivolous."    *Id.* at 264.    The *Robbins* Court held that the *Anders* methodology for protecting that right is not absolute, and the States may set forth different procedures that similarly protect the right to appellate counsel.    In so holding, the Supreme Court reiterated "that the *Anders* procedure is not 'an independent constitutional command,' but rather is just 'a prophylactic framework' that we established to vindicate the constitutional right to appellate counsel...."    *Id.* at 273 (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)).

The Louisiana Supreme Court has sanctioned procedures for appointed appellate counsel to follow that both assist the state appellate courts in their determination and fulfill the dictates of *Anders*.    *State v. Mouton*, 653 So.2d 1176 (La. 1995) (citing with approval the procedures outlined in *State v. Benjamin*, 573 So.2d 528 (La. App. 4 Cir. 1990)); *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241.    The United States Supreme Court has neither addressed nor found the procedure, sanctioned by the Louisiana Supreme Court and implemented in this state by which counsel is permitted to withdraw under *Anders*, deficient.

In *Benjamin*, the Louisiana Fourth Circuit Court of Appeal held:

[T]his Court unanimously adopted Internal Rule 11, which now governs processing of "errors patent" cases. This rule provides:

1. A court-appointed appellate attorney may file a motion to withdraw

if the attorney, after a conscientious and thorough review of the trial court record, determines that the appeal is wholly frivolous. One copy of the motion, prepared for the signature of three judges, should be filed.

2. The appellant's brief should accompany the motion to withdraw. The brief shall comply with Rule 2-12, Uniform Rules, Courts of Appeal, and should include a thorough review of the procedural history of the case, a review of the facts of the case, a reference to anything in the record that might arguably support the appeal or a statement negating the presence of such, and a statement, either in the motion to withdraw or the appellant's brief, that counsel, after a conscientious and thorough review of the trial court record, can find no non-frivolous issues to raise on appeal and no ruling of the trial court which arguably supports the appeal.

3. Counsel shall attach to the appellant's brief proof that a copy of the motion and the brief were forwarded to the appellant, with a notation whether the appellant has/has not received a copy of the trial court record and/or trial transcript. Counsel shall inform the appellant that he or she may file a supplemental brief in his or her own behalf.

4. After receiving the brief and motion, this Court shall notify the appellant that he or she should inform the court in writing within thirty days if he or she intends to file a brief.

5. If the Court finds, after an independent review of the record, that the appeal is wholly frivolous, it may grant the motion and affirm the conviction or trial court judgment. If the Court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal point(s) identified by the Court, or grant the motion and appoint substitute appellate counsel.

Counsel is required to review the district court record thoroughly and present any claim with arguable merit to this court. However, this court will not require appointed counsel to raise frivolous issues, then refer to legal authorities which demonstrate that these issues are in fact frivolous and thus undermine his client's position. Indigent defendants have the right to be assisted by an appellate attorney exercising professional competence and judgment. We are convinced that indigent appellants receive such assistance when an attorney, exercising professional competence and judgment after a

conscientious and thorough review of the record, concludes that there are no non-frivolous issues to raise on appeal and no rulings which arguably support the appeal. This is the same exercise in judgment made by an appointed or retained appellate attorney who finds one arguable issue but no other non-frivolous issues to raise on appeal. Counsel should, and must, raise whatever issues "arguably support the appeal", including arguments for change in established law when a valid basis for advocating such change exists. However, counsel need not raise issues believed to be without merit and not even arguably supportive of the appeal.

When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, *Anders* requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

*Benjamin*, 573 So.2d at 530-31.

In *Jyles*, the Louisiana Supreme Court subsequently held:

In *State v. Mouton*, 95-0981, p. 2 (La. 4/28/95), 653 So.2d 1176, 1177, this Court sanctioned the procedures outlined in *State v. Benjamin*, 573 So.2d 528 (La. App. 4th Cir. 1990), for use by the appellate courts of Louisiana because the brief filed on behalf of the indigent defendant by appointed counsel provided "a detailed discussion of various aspects of the case, including sufficiency of the evidence, the lack of objection to any of the testimony presented at trial, and the adequacy of the trial court's compliance with Louisiana's Sentencing Guidelines." We were therefore satisfied in *Mouton* that the defendant had had " 'the benefit of what wealthy defendants [contemplating an appeal] are able to acquire by purchase-a diligent and thorough review of the record and an identification of any arguable issues revealed by that review....' "    *Id.* (quoting *McCoy v. Court of Appeals of*

*Wisconsin*, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988)).

In this case, although the procedural statement of the proceedings below and the summary of the evidence presented at trial indicate that counsel read through the record, his conclusory request that the court of appeal "review the record for errors patent," in connection with another conclusory statement that "counsel, after a conscientious and thorough review of the trial record, can find no non-frivolous issues to raise on appeal and no ruling of the trial court which arguably supports the appeal" does not provide the same assurance. An *Anders* brief need not catalog tediously every meritless objection made at trial or by way of pre-trial motions with a labored explanation of why the objections all lack merit. *See Jones v. Barnes*, 463 U.S. 745, 752-53, 103 S.Ct. 3308, 3313-14, 77 L.Ed.2d 987 (1983) ("There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.... [I]mpos[ing] on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders* "). Nevertheless, "[u]nlike the typical advocate's brief in a criminal appeal, which has as its sole purpose the persuasion of the court to grant relief," the *Anders* brief must "assure the court that the indigent defendant's constitutional rights have not been violated." *McCoy*, 486 U.S. at 442, 108 S.Ct. at 1903. Counsel must demonstrate to the appellate court by full discussion and analysis that he has cast an advocate's eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration. *See United States v. Pippen*, 115 F.3d 422, 426 (7th Cir. 1997) (a brief which offers "no hint of a discussion of arguments that might be raised and why counsel believes them to be frivolous" does not comply with *Anders* and its progeny); *United States v. Urena*, 23 F.3d 707, 708-09 (2nd Cir. 1994) ("A naked statement that no non-frivolous issues exist, without analysis or a discussion of the record, is inadequate to fulfill counsel's obligations under *Anders*"). Independent review of the record by the appellate court, or the opportunity of the defendant to file his own brief, while providing important and necessary safeguards, cannot substitute for the essential equal protection requirement that appointed counsel representing an indigent defendant "act in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae." *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967).

Accordingly, while we confirm our general endorsement of *Benjamin*, we emphasize that the brief filed by counsel must review not only the procedural

history of the case and the evidence presented at trial but must also provide, as did the advocate's brief in *Mouton*, "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." *Id*., 653 So.2d at 1177.

*Jyles*, 704 So.2d at 241-42.

Here, the appellate court properly applied the framework set out above under state law in enforcing *Anders* by allowing counsel to withdraw upon finding no non-frivolous issues for review.[23]   Appellate counsel's brief complied with the requirements of *Anders*. The 16-page *Anders* brief included a detailed procedural context, statement of facts, and consideration of specific issues with full analysis that included proper citation to the transcript.   Appointed counsel noted that Faggard entered into an unqualified guilty plea with no reservation of rights, thereby waiving all non-jurisdictional defects.   He raised the issues Faggard himself set out in his pro se motion for appeal, including the legality of his sentence and withdrawal of his guilty plea.   Faggard also filed a supplemental brief in which he stated, "[t]he appellant Mr. Jefferson Faggard, Jr. *consents to counsel's motion to withdraw* and submits his own original brief setting forth assignments of error in proper person."[24]   He set forth seven assignments of error.

---

[23]   Given the holding in *Smith v. Robbins, supra*, and the fact that the Supreme Court has not addressed the procedures in Louisiana for enforcing the right to appellate counsel under *Anders*, the claim may very well be non-cognizable on federal habeas review.   *See, e.g.*, *Lienemann v. Harry*, No. 1:14-CV-43, 2017 WL 822789, at *10-11 (W.D. Mich. Mar. 2, 2017); *Chavez v. Dretke*, No. 3:03-CV-229-P, 2004 WL 2360026, at *3 (N.D. Tex. Oct. 19, 2004).   However, the Court has reviewed the claim in an abundance of caution.

[24]   State Rec., Vol. 6 of 6, Original Brief of Appellant submitted in proper person at pg. 6.

The Louisiana Fifth Circuit conducted a thorough, independent analysis of the record and found no issues of arguable merit.    The appellate court also considered each of Faggard's seven claims for relief and conducted an error-patent review before affirming and granting counsel's motion to withdraw.    As part of its review, the appellate court specifically addressed the bill of information and Faggard's claim that trial counsel was ineffective for not challenging count two.    Faggard argued in his supplement brief to the Louisiana Supreme Court that the *Anders* review was limited and the record incomplete because "the State did not make full disclosure when considering the fact that the State had previously charged [him] in 2013 under docket number 12-5780, the later resending its decision to *nolle prosequi* "Count 1" and re-instate the offense under docket number 14-0947. When they are one in the same offense."[25]    Contrary to his assertion, however, this formed part of the trial record because the issue with regard to the previous Case No. 12-5780 was raised and addressed during the hearing on Faggard's motion to quash the bill of information.[26]    The state prosecutor explained he had been charged with the November 2012 offense in an earlier bill and ordered released, but later arrested on another charge. The State subsequently filed an amended and superseding bill of information, and Faggard

---

[25]    State Rec., Vol. 6 of 6, Application for Certiorari, Supplemental Brief (section designated as "Summary of Supplemented Argument").

[26]    State Rec., Vol. 3 of 6, Transcript of Hearing (November 5, 2014), pp. 23-26.    The Court notes that defense counsel plainly disagreed with the basis for Faggard's pro se motion to quash and so informed the trial court at the start of the hearing.    *Id.* at 2-3.

was rearraigned.[27]    Therefore, Faggard's claim that the appellate court's review was flawed because of an incomplete record or access to documents in Case No. 12-5780, is without merit.    The state court's determination allowing withdrawal pursuant to *Anders* was reasonable.    He is not entitled to federal habeas relief on this claim.

    *C.*   *Involuntary Guilty Plea*

    Faggard alleges in his federal application that his guilty pleas were "constitutionally infirm and involuntary and unintelligently made. Establishing the trial judges failure to advise him of the nature of the crime [crucial elements], the nature of the accusations against him [what the state had to prove and the essential facts]."[28]    In the state courts, he also argued that the trial court failed to advise him that the State had the burden of proving each element of the crime beyond a reasonable doubt, which he urges is an essential part of his right to trial by jury, or to inform him of the possible minimum and maximum sentences.

    On direct appeal, the Louisiana Fifth Circuit thoroughly analyzed the issue, which was raised by counsel's *Anders* brief and Faggard's pro se supplemental brief.    The appellate court affirmed counsel's assertion that there was no basis in the record to support the conclusion that the guilty pleas were constitutionally infirm, reasoning:

> The record shows that defendant was aware that he was pleading guilty to two counts of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance and one count of possession of methamphetamine. The transcript and waiver of rights form both reflect that defendant was advised of his rights to a trial by jury or by the court, to confront and cross-examine his accusers, against self-incrimination, and that

---

[27] *Id.* at 24-26.

[28] Rec. Doc. 3, p. 8.

by pleading guilty he was waiving those rights. Thus, defendant was properly advised of his *Boykin* rights, and the record reflects that defendant indicated that he understood he was waiving these rights. In addition, defendant indicated that he had discussed the case with his attorney, that the waiver of rights form was explained to him, and that he understood the waiver of rights form. Defendant indicated that he had not been forced, intimidated, coerced, or promised anything if he pleaded guilty. The transcript reflects that defendant indicated he understood that by pleading guilty he was admitting that he had, in fact, committed the charged crimes.

The transcript and the waiver of rights form both reflect that defendant was advised that he faced a maximum sentence of 15 years imprisonment on each of the two counts of creation or operation of a clandestine laboratory and a maximum sentence of five years imprisonment for possession of methamphetamine. They also reflect that defendant was advised that if his guilty pleas were accepted, he would be sentenced to 15 years imprisonment on counts one and two and five years on count three, to run concurrently with each other. The State also agreed to file a "triple bill," instead of alleging that defendant was a "quadruple offender," in exchange for his guilty plea.[29]

The appellate court likewise rejected Faggard's first pro se assignment of error challenging

his guilty plea:

In his first *pro se* assignment of error, defendant asserts that the record does not show that he was properly "Boykinized" or that his guilty plea as to count two was intelligently and voluntarily made. Specifically, he argues that the trial judge failed to inform him of the nature of the charges against him by failing to inform him of the "crucial elements" of the crime to which he was pleading guilty. Defendant asserts that the judge also failed to inform him that the State had the burden of proving that he was guilty beyond a reasonable doubt. Defendant also states that the trial judge failed to inform him of the minimum and maximum sentencing range and of his right to a jury trial.

Despite defendant's assertions, as previously stated in the *Anders* discussion, the record reflects that defendant was informed that he was waiving his right to a jury trial. Although the record does not reflect that defendant was advised that the State had to prove he was guilty beyond a reasonable doubt, the record does show that defendant was informed that he was waiving his right to assert that the State may not be able to prove the charges against him.

---

[29]  *State v. Faggard*, 184 So.3d at 845.

Further, *Boykin* does not require that a defendant be informed that the State's burden of proof is beyond a reasonable doubt. *See also* La. C.Cr.P. art. 556.1.

Defendant also argues that the trial judge failed to inform him of the elements of the crime. La. C.Cr.P. art. 556.1 outlines the duty of the court when accepting a plea of guilty in felony cases, providing, in pertinent part:

A. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:

(1) **The nature of the charge to which the plea is offered**, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.

[Emphasis added.]

In *State v. Respert*, 14–769, p. 10 (La. App. 5 Cir. 2/25/15), 168 So.3d 839, 845, this Court, citing *State v. Wilson*, 12–819 (La. App. 5 Cir. 5/16/13), 118 So.3d 1175, 1177, stated the following:

The test for the validity of a guilty plea does not depend on whether the trial court specifically informed the defendant of every element of the offense. Rather, the defendant must establish that he lacked awareness of the essential nature of the offense to which he was pleading. Violations of Article 556.1 that do not rise to the level of *Boykin* violations are subject to harmless error analysis. To determine whether a violation of Article 556.1 is harmless, the proper inquiry is whether the defendant's knowledge and comprehension of the full and correct information would have likely affected his willingness to plead guilty.

Subsection E of La. C.Cr.P. art. 556.1 further provides that "[a]ny variance from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea." The failure to fully comply with Article 556.1 is a statutory breach, rather than a constitutional breach, and thus, the defendant is required to show prejudice as a result of the error. *Respert, supra. See also Ott*, 12–111 at 11, 102 So.3d at 952.

In the present case, defendant acknowledged on the waiver of rights form that he understood the nature of the charges against him. As previously discussed, the record shows that defendant was aware that he was pleading guilty to two counts of creation or operation of a clandestine laboratory for the unlawful

manufacture of a controlled dangerous substance and one count of possession of methamphetamine. The record shows that defendant was properly advised of his *Boykin* rights. It is further noted that the transcript reflects that defendant never asked any questions about the nature of the charges during the plea colloquy or made any indication that he did not understand the charges or any element of the charges.

Defendant has failed to establish that he lacked awareness of the essential nature of the offenses to which he pleaded guilty, or that he was prejudiced by the trial court's failure to fully comply with the provisions of La. C.Cr.P. art. 556.1. Accordingly, the trial court's failure to inform defendant of the elements of the offenses and the nature of the charges was harmless.

In addition, defendant argues that he was not informed of the maximum and minimum sentence exposure. The record reflects that during the guilty plea colloquy and on the waiver of rights form, defendant was advised of the maximum sentencing exposure that he faced for all three counts. The record does not show that he was advised as to the minimum penalties he faced, as required by La. C.Cr.P. art. 556.1. However, a violation of Article 556.1 for the failure to inform a defendant of the minimum penalty does not cause prejudice if defendant knew the sentence he would receive, and he received that sentence. An advisement of the agreed upon sentence is sufficient for compliance with La. C.Cr.P. art. 556.1. *See State v. Craig*, 10–854, p. 7 (La. App. 5 Cir. 5/24/11), 66 So.3d 60, 64; *State v. Broadway*, 40,569, p. 7 (La. App. 2 Cir. 1/25/06), 920 So.2d 960, 963. As such, the trial court's failure to properly advise defendant of the minimum sentence was harmless. Based on our review of the record and the applicable law, we find no merit in defendant's first *pro se* assignment of error.[30]

The Louisiana Supreme Court denied relief without additional stated reasons.

These state-court findings are subject to the deferential standards of review under the AEDPA, and may only be disturbed if they resulted in a finding that was contrary to, or an unreasonable application of, federal law.    28 U.S.C. § 2254(d)(1).    The Court finds that Faggard has made no such showing in this case.

---

[30]   *Id.* at 845-47 (footnote omitted).

A guilty plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Courts consider all relevant circumstances when determining whether a plea was voluntary. *Id.* at 749. Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving " 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.' " *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941)). A "plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)).

Furthermore, "[t]he consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990); *Ables v. Scott*, 73 F.3d 591, 592 n. 2 (5th Cir. 1996). A defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes. *Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir.), *cert. denied*, 474 U.S. 838, 106 S.Ct. 117, 88 L.Ed.2d 95 (1985); *United States v. Hernandez*, 234 F.3d 252,

256-57 (5th Cir. 2000) (with respect to sentencing issues, a matter is a direct consequence of the plea only if it is related to either the length or nature of the sentence).    Louisiana law follows these same directives in its statutory requirements under the Louisiana Code of Criminal Procedure article 556.1 for felony guilty pleas.    Thus, a plea is valid if the defendant understood the nature of the constitutional protections being waived, the charges against him and the sentencing exposure.    *See James*, 56 F.3d at 666 (citing *Henderson*, 426 U.S. at 645 n. 13).

At the end of the State's case, Faggard chose to plead guilty to all charges.    After discussions with counsel, he executed a written waiver of rights guilty plea form.[31]    A plea colloquy followed on the record.    Defense counsel informed the court that Faggard wished to withdraw his not-guilty pleas and enter pleas of guilty.    The trial court named the felony charges and misdemeanor charges to which he was pleading guilty and explained the maximum penalties associated with each charge.    Faggard claimed to fully understand the constitutional rights explained to him by his counsel and the trial court, and the fact that he was waiving those rights by pleading guilty, including the right to trial by jury, the right to confront and cross-examine his accusers, and the right against self-incrimination.[32]    He said that no one was forcing him to plead guilty and that no one had promised him anything

---

[31]  The record reflects that the trial court even indulged defense counsel's request urged by his client that Faggard be allowed to talk to his grandfather about the plea offer. State Rec., Vol. 5 of 6, Trial Transcript, pp. 161-62.    *See* State Rec., Vol. 1 of 6, Guilty Plea Form.

[32]  State Rec., Vol. 5 of 6, Trial Transcript (Plea Colloquy), pp. 167-68, 172-73.

to induce his plea.[33]    He assured the trial court that he was pleading freely and voluntarily and that he understood the penalties for his crimes.[34]

At the plea hearing, the trial court repeatedly informed Faggard he was under no obligation to plead guilty.    However, Faggard affirmed on the record that he wanted to plead guilty.[35]    He also acknowledged he understood that by pleading guilty to the crimes, he was admitting that he had, in fact, committed those crimes.[36]    As the trial record confirms, the State's evidence against him was substantial.    The state prosecutor informed the trial court that the prosecution would rely on the record of the trial as a recitation of the facts.    The defense did not object to this.    The court found a factual basis for the pleas and accepted his guilty pleas as knowingly, intelligently and freely entered.[37]

Faggard's argument that his pleas should be set aside because the trial court failed to inform him which of the sets of statutory elements he was pleading guilty to under Louisiana Revised Statute 40:983 (A), or to state on the record which sets of elements were being used as a factual basis for the guilty plea is unavailing.    The state appellate court held that "the trial court had no constitutional duty to ascertain a factual basis prior to accepting

---

[33]  *Id.* at 170.

[34]  *Id.* at 170-71.

[35]  *Id.* at 169-170.

[36]  *Id.* at 173.

[37]  *Id.* at 174-75.

defendant's guilty plea in this case."[38]    Further, it found that the State nevertheless did provide a factual basis in this case to support the guilty pleas.    Faggard's contention that the trial judge erred in failing to elicit an adequate factual basis for his guilty plea is not founded on clearly established holdings of the Supreme Court.    Indeed he cites no United States Supreme Court precedent for the proposition that the Constitution requires that the state court establish a factual basis for a guilty plea before accepting it under these circumstances.    *See Loftis v. Almager*, 704 F.3d 645, 648 (9th Cir. 2012) (citing *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("Putting a factual basis for the plea on the record has become familiar as a result of statutes and rules, not as a result of constitutional compulsion.")).    The Constitution requires that a plea be knowing, intelligent and voluntary.    *Boykin*, 395 U.S. at 244.    As the state-court record demonstrates, Faggard acknowledged on the record his understanding of the charges against him, the rights he was waiving, the consequences of his plea, and the maximum sentences.    He denied being coerced into pleading guilty.    The state court's determination that his plea was voluntary, knowing, and intelligent was neither contrary to nor an unreasonable application of federal law.    Habeas relief is not warranted on this claim.

D. *Ineffective Assistance of Counsel*

Faggard asserts that his trial counsel was ineffective because he failed to pursue certain pretrial motions (a motion to sever and the re-urging of a motion for preliminary exam) with respect to count two and failed to exclude hearsay testimony from a state

---

[38]    *State v. Faggard*, 184 So.3d at 849.

witness.    The Louisiana Fifth Circuit denied the claims on the merits, finding that the alleged actions or omissions by counsel fell within the realm of trial strategy and constituted the exercise of reasonable professional judgment.    The Louisiana Supreme Court denied relief without additional stated reasons.

Faggard entered an unqualified guilty plea and, thus, failed to preserve any pre-trial rulings for appeal and waived all nonjurisdictional defects.    *Tollett v. Henderson*, 411 U .S. 258, 267 (1973).    A knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea.    *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).    Here, the state appellate court recognized that Faggard waived all challenges regarding his pretrial motions, including his motions to quash and motions to suppress statements, evidence, and identification, by entering his unconditional guilty plea that failed to preserve adverse rulings for appeal.    Thus his claims concerning counsel's pre-plea ineffectiveness for failure to file a motion to sever, re-file a motion for preliminary examination and exclude a witness's hearsay testimony are similarly waived by the valid guilty plea and fail for that reason alone.

Even broadly construing his ineffective assistance claim as arguably intertwined with the contention that his guilty plea, at least as to count two, was not voluntary or knowing based on erroneous advice of counsel as to the viability of one of the charged offenses, his argument fares no better.    Faggard contends he informed counsel he did not want to plead guilty to count two.    He argues that, but for counsel's deficient performance in failing to

challenge count two, he would not have pleaded guilty and would have insisted on going to trial.

The Supreme Court has held that the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 689 (1984), applies to ineffective assistance claims in the guilty plea context. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985). To establish deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 57. "Judicial scrutiny of counsel's performance must be highly deferential," and the petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and might be considered sound trial strategy. *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted). To satisfy the prejudice prong in the guilty plea context, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Faggard has failed to articulate any factual or legal basis on which count two could have been dismissed either by motion to sever or motion for a preliminary examination. And regardless, he was still facing potential convictions on two other felony counts and numerous misdemeanor counts and sentencing as a quadruple-felony offender, which carried a maximum life sentence. Under the circumstances, defense counsel's recommendation as to the guilty plea would have remained the same. Moreover, Faggard cannot demonstrate that there is a reasonable probability he would not have pleaded guilty

but for counsel's actions in failing to challenge one of the counts in the bill of information. As was clear from the State's case presented at trial, the evidence against him was substantial.    Given the serious charges against him, the guilty plea provided him with a clear benefit.    The State agreed to forego the quadruple-offender bill under which he would have faced a possible life sentence and instead file a triple bill.    The Court finds no reasonable probability that Faggard would have rejected the extremely beneficial plea bargain and insisted on going to trial but for counsel's failure to challenge the sufficiency of count two.    He agreed to 15-year sentences on counts one and two for creation or operation of a clandestine laboratory and a five-year sentence for possession of methamphetamine, rather than stand trial where he could be convicted of the three felony counts as charged and face a significantly higher sentence or even life imprisonment as an habitual offender.    On the record, it appears that the guaranteed 15-year and five-year sentences would have been such a strong inducement to plead guilty that he would have done so even if his lawyer had vigorously challenged count two, so he was therefore not prejudiced even if his counsel was ineffective.    Faggard has failed to establish prejudice as required under the second *Strickland* prong.    He is not entitled to relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Faggard's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[39]

New Orleans, Louisiana, this ___4th___ day of _____January_____, 2017.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[39] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.